**IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF VIRGINIA
ABINGDON DIVISION**

| | |
|---|---|
| **DAVID BOWEN,** ) | |
| ) | |
| Plaintiff, ) | Case No. 1:11CV00021 |
| ) | |
| v. ) | **OPINION** |
| ) | |
| **MICHAEL J. ASTRUE,** ) | By: James P. Jones |
| **COMMISSIONER OF** ) | United States District Judge |
| **SOCIAL SECURITY,** ) | |
| ) | |
| Defendant. ) | |

*Ginger J. Largen, Morefield & Largen, P.L.C., Abingdon, Virginia, for Plaintiff; Eric P. Kressman, Regional Chief Counsel, Region III, Jared Littman, Assistant Regional Counsel, Maija DiDomenico, Special Assistant United States Attorney, Office of the General Counsel, Social Security Administration, Philadelphia, Pennsylvania, for Defendant.*

In this social security case, I affirm the final decision of the Commissioner.

I

Plaintiff David Bowen filed this claim challenging the final decision of the Commissioner of Social Security (the "Commissioner") denying his claim for disability insurance benefits ("DIB") and supplemental security income pursuant to Titles II and XVI of the Social Security Act (the "Act"). 42 U.S.C.A. §§ 401-433

(West 2011), 1381-1383f (West 2003 & Supp. 2011).  Jurisdiction of this court exists pursuant to 42 U.S.C.A. §§ 405(g) and 1383(c)(3).

Bowen filed applications for benefits on May 19, 2008, claiming disability since December 5, 2007.  The claims were denied initially and on reconsideration.  A hearing was held before an Administrative Law Judge ("ALJ") on April 14, 2010.  At the hearing Bowen, represented by counsel, and an independent vocational expert testified.  The ALJ denied his claim and that decision became final when the Social Security Administration Appeals Council denied his request for review.  Bowen then filed his Complaint in this court, objecting to the Commissioner's final decision.

The parties have filed cross motions for summary judgment, which have been briefedand orally argued.  The case is ripe for decision.

II

Bowen was born on June 21, 1968, making him a younger individual under the regulations.  20 C.F.R. §§ 404.1563(c), 416.963(c) (2011).  He is a high school graduate and has past relevant work as a roofer, general laborer and machine operator.  He initially claimed disability due to back problems and hypertension.  He claimed that he stopped working in early December 2007 after he hurt his back

clearing logs from a creek. He now also claims that he is disabled due to depression.

From November 2007 through June 2008, Bowen was treated by William Powers, M.D., at Southwest Virginia Community Health Clinic. He was initially treated for high blood pressure and tingling in his fingers. In May 2008, almost six months after he claimed onset of his disability, he sought treatment from Dr. Powers for back pain, telling him he had been "lifting logs out of creek on Mon[day] and hurt back." (R. at 275.) He said he had constant lower back pain that was aggravated by movement. Dr. Powers diagnosed it as a strain.

A few days later, Bowen presented to Alleghany Memorial Hospital complaining of back pain.[1] An MRI showed only mild left-side osteophytosis and his lumbar spine was otherwise normal. He was diagnosed with a lumbar-sacral strain and given Fioricet for pain.

On June 4, 2008, Bowen returned to Dr. Powers complaining of lower back pain aggravated by movement and radiating to his left leg. Dr. Powers observed that although Bowen had some tenderness and positive straight leg raising, he could flex, had no swelling, and his reflexes were intact. An X ray showed mild to moderate L2-L3 left lateral vertebral body spurring. An MRI showed minimal broad posterior disc bulging at L4-L5 with transverse radial tears.

---

[1] When he presented at the ER, he reported that his back pain was the result of picking up logs about a week earlier. (R. at 260.)

In August, Bowen was treated by Steven R. Huff, M.D., at the Tri-Area Health Clinic. He stated he had constant pain in the left lumbar back and numbness in the left leg. Dr. Huff noted no palapable tenderness or spasm, no spinal tenderness and that flexion was limited mainly by hamstring tightness. Dr. Huff concluded that Bowen's symptoms were not explained by the MRI. Bowen returned to Dr. Huff in February 2009 complaining primarily of hypertension. Dr. Huff diagnosed GERD as causing chest pain and increased Bowen's medication for hypertension.

In May and June 2009, Bowen sought treatment at the Free Clinic of Twin Counties for back pain and leg numbness. He underwent another MRI which showed mild to moderate spondylosis. He did not return to the Free Clinic until January and March 2010, primarily for refills on his medications and also complaining of back pain. Kathleen Schultz, M.D., completed a clinical assessment of pain on March 31, 2010. She concluded that his pain was "present and found to be incapacitating," that physical activity greatly increased his pain "causing abandonment of tasks related to daily activities or work," and that medication impacted Bowen's work ability to such an extent that he is restricted from the workplace and unable to function. (R. at 370.)

In June 2009, Bowen began counseling sessions at Mount Rogers Community Services Board ("Mount Rogers"), complaining of depression. He

said that he had crying spells, decreased tolerance for stress and exposure to groups and sleeping problems. His assessment reported that his appearance was unremarkable, his mood was anxious, but not sad or fearful, his cognitive, intellectual functioning and thought processes were unremarkable, his perceptions and speech were unremarkable, and his thought content was unremarkable. The counselor also noted that Bowen was motivated to change, had good communication, intellectual and job skills and a stable social environment. Also, Bowen prepared his own meals, managed his finances, did housekeeping, took his medications, went shopping and provided his own transportations. The only moderate limitation was Bowen's ability to manage his impulsivity. He interacted appropriately in social situations, fit in socially and cooperated with service providers.

At his June 2009 visit with Dr. Huff, Bowen reported worsening depression. Dr. Huff diagnosed depression, anxiety and insomnia and prescribed Mirtazapine for depressive symptoms and sleep.

Bowen continued his treatment at Mount Rogers by attending counseling sessions. It was generally noted that his appearance was unremarkable except for reduced eye contact, his affect/mood was either unremarkable or anxious, and his thought processes were unremarkable except for some impaired concentration and memory. In August 2009, he reported periods of agitation and impulsive anger but

presented as much less restless and "seemed to 'have a spring' in his step." (R. at 319.)  In January 2010, he reported problems including chronic insomnia, excessive worrying, and an inability to feel calm mentally or physically.  He stated he has panic attacks when out in public or in stores.  He stated that the medications he was getting from the Free Clinic for anxiety and depression were not very helpful.  Bowen's status was unchanged in February 2010 and he was feeling increasingly anxious and restless.  The counselor noted that Bowen was very negative and fatalistic about himself and his future.  In April 2010 and May 2010, Bowen's status was much the same.

Bowen's counselor completed a Medical Assessment of Ability to do Work-Related Activities (Mental) that was reviewed and approved by Dr. Schultz on April 6, 2010.  The counselor concluded that Bowen had no ability to function in the areas of relating to co-workers, dealing with the public, dealing with work stresses, and maintaining attention/concentration due to his severe anxiety and depression.  She found that Bowen would have no useful ability to understand, remember or carry out anything but simple job instructions and that he had no useful ability to behave in an emotionally stable manner, relate predictably in social situations or demonstrate reliability.

A clinical assessment update by Mount Rogers in August 2010, reported that Bowen could take care of himself in terms of meal preparation, money

management, housekeeping, taking medication, and transportation. Bowen was alert, tense, oriented x3, cooperative but with anxious mood and affect. He was cognitively intact with adequate judgment and insight.

Bowen completed two function reports, one in June 2008 and one in November 2008. In each he reported no limitations on taking care of his personal needs and grooming and no need for assistance in taking medications. He reported that he prepared his own meals, drove, shopped, talked to others on the phone and spent time with his family and friends.

In January 2009, Robert McGuffin, M.D., a state agency physician, completed a physical residual functional capacity ("RFC") assessment. He opined that Bowen could occasionally lift/carry 50 pounds, frequently lift/carry 25 pounds, stand/walk for about six hours in an eight-hour workday, and sit for about six hours in an eight-hour workday.

At his hearing before the ALJ, Bowen testified that he stopped working because he hurt his back and that his pain has been constant since then. He testified that he had trouble with his memory, with concentrating and paying attention, and that crowds of people bothered him.

The vocational expert testified that an individual with Bowen's characteristics, physical limitations and mental limitations, including an inability to maintain concentration necessitating tasks requiring short, simple instructions, and

limited to no more than occasional interactions with the public, would be able to find jobs existing in the national economy.

Based upon the record and the testimony at the hearing, the ALJ concluded that Bowen suffered from certain severe impairments, including lumbar strain, insomnia, and anxiety/depression. The ALJ found that none of the severe impairments met or equaled a listing impairment and that Bowen had the RFC to perform light work with certain limitations, as available in the national economy. As such, the ALJ found that Bowen was not disabled.

Bowen argues the ALJ's decision is not supported by substantial evidence. For the reasons below, I disagree.

III

The plaintiff bears the burden of proving that he is under a disability. *Blalock v. Richardson*, 483 F.2d 773, 775 (4th Cir. 1972). The standard for disability is strict. The plaintiff must show that his "physical or mental impairment or impairments are of such severity that he is not only unable to do his previous work but cannot, considering his age, education, and work experience, engage in any other kind of substantial gainful work which exists in the national economy . . . ." 42 U.S.C.A. §§ 423(d)(2)(A) (2011), 1382c(a)(3)(B).

In assessing DIB claims, the Commissioner applies a five-step sequential evaluation process. The Commissioner considers whether the claimant: (1) has worked during the alleged period of disability; (2) has a severe impairment; (3) has a condition that meets or equals the severity of a listed impairment; (4) could return to his past relevant work; and (5) if not, whether he could perform other work present in the national economy. *See* 20 C.F.R. §§ 404.1520(a)(4), 416.920(a)(4) (2011). If it is determined at any point in the five-step analysis that the claimant is not disabled, the inquiry immediately ceases. *Id*. The fourth and fifth steps of the inquiry require an assessment of the claimant's RFC, which is then compared with the physical and mental demands of the claimant's past relevant work and of other work present in the national economy. *Id.*; *Johnson v. Barnhart*, 434 F.3d 650, 653-54 (4th Cir. 2005).

In accordance with the Act, I must uphold the Commissioner's findings if substantial evidence supports them and the findings were reached through application of the correct legal standard. *Craig v. Chater*, 76 F.3d 585, 589 (4th Cir. 1996). Substantial evidence means "such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Richardson v. Perales*, 402 U.S. 389, 401 (1971) (quotation marks and citation omitted). Substantial evidence is "more than a mere scintilla of evidence but may be somewhat less than a preponderance." *Laws v. Celebrezze*, 368 F.2d 640, 642 (4th Cir. 1966). It is the

role of the ALJ to resolve evidentiary conflicts, including inconsistencies in the evidence.  *Seacrist v. Weinberger*, 538 F.2d 1054, 1056-57 (4th Cir. 1976).  It is not the role of this court to substitute its judgment for that of the Commissioner.  *Hays v. Sullivan*, 907 F.2d 1453, 1456 (4th Cir. 1990).

Bowen argues that the ALJ's opinion is not supported by substantial evidence because the ALJ failed to properly consider the evidence of his non-exertional impairments, particularly his pain and his mental impairment.  Bowen argues that the ALJ erred in discounting the evidence of Mount Rogers' medical records and the opinions of Dr. Schultz and Bowen's counselor.  The ALJ's opinion shows that he did not fail to take account of the Mount Rogers medical records.  Rather, he reviewed and summarized the records and took the evidence of Bowen's mental impairments into account both when determining that Bowen's depression was a severe impairment and in considering his RFC.

The ALJ did decide to give little weight to Dr. Schultz's opinion that Bowen's back pain was so debilitating as to preclude him from work.  As the ALJ noted, Dr. Schultz's opinion contradicts other evidence in the record, including multiple MRIs, which indicate that Bowen suffers from an essentially mild to moderate lumbar strain and is only somewhat limited.  *See* 20 C.F.R. §§ 404.1527(d)(3), 416.927(d)(3) (an ALJ may give less weight to opinions that are not supported by medical signs and laboratory findings); 20 C.F.R. §§

404.1527(d)(4), 416.927(d)(4) ("[T]he more consistent an opinion is with the record as a whole, the more weight we will give to that opinion.").

The ALJ also gave little weight to the opinion of Bowen's counselor at Mount Rogers that he was severely restricted in his ability to relate to co-workers, deal with the public, and work stresses.  As the ALJ noted, the assessment appeared to be based solely on Bowen's subjective complaints as it did not appear that any psychological testing was done or objective findings made.  Also, the severe limitations exceeded Bowen's complaints as described in both his function reports and at his hearing.  As the ALJ observed, Bowen gets along well with his grandmother, fiancé and children.  He shops and interacts well with his counselors and other health providers.  For the reasons discussed above, the ALJ's decision to give the counselor's opinion little weight was appropriate.  20 C.F.R. §§ 404.1527(d)(3-4), 416.927(d)(3-4).

Bowen also argues that the ALJ failed to consider how his depression and anxiety would affect his ability to function outside of the home setting.  Bowen notes that the record reflects his tendency to suffer from stress when in public or faced with crowds.  The ALJ found that Bowen's depression and anxiety were severe impairments and considered his ability to function both inside and outside the home both at the fourth and fifth steps of the sequential evaluation process.  At the fourth step, when concluding that Bowen's mental impairments were not listing

level, the ALJ discussed Bowen's lack of restriction in daily living, including his ability to drive and shop. He also discussed Bowen's mild to moderate limitations in the area of social functioning, again noting that Bowen drove and shopped, got along well with others, and related well with his counselors. He did note that Bowen testified to a difficulty with crowds and irritability. At step five, the ALJ considered Bowen's limitations in greater detail, including his difficulties with crowds. In assessing Bowen's RFC, the ALJ accounted for a public interaction limitation by stating that Bowen "should have no more than occasional interaction with the public." (R. at 22.) The record requires nothing more than this limitation to the RFC.

Finally, Bowen argues generally that the ALJ did not consider the cumulative effects of his impairments and that had the ALJ considered his impairments as a whole, he would have understood that Bowen was disabled. However, Bowen's real argument again seems to be that the ALJ failed to consider the extent of Bowen's mental limitations. The evidence shows that Bowen suffers from mild to moderate lumbar back strain and from depression and anxiety which affect his ability to concentrate and interact with people. The evidence supports the ALJ's conclusion that these impairments, individually and together, are not so severe as to preclude Bowen from all work. The ALJ clearly considered both

Bowen's pain and his mental impairments when crafting his RFC with its appropriate limitations and substantial evidence supports his conclusions.

IV

For the foregoing reasons, the plaintiff's Motion for Summary Judgment will be denied, and the defendant's Motion for Summary Judgment will be granted. A final judgment will be entered affirming the Commissioner's final decision denying benefits.

DATED:  February 8, 2012

/s/  James P. Jones
United States District Judge